IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-02254-CMA-BNB

WARREN MILLER ENTERTAINMENT, INC.,

    Plaintiff,

v.

LEVEL 1 PRODUCTIONS, INC.

    Defendant.

---

**OPINION AND ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING ORDER**

---

**THIS MATTER** comes before the Court[1] pursuant to the Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order **(# 2)**.

According to the Complaint **(# 1)**, since 1948, an individual named Warren Miller has been making athletic and adventure films focusing on skiing and related winter sports. Over the years, Mr. Miller has developed widespread acclaim for his filmmaking and associated eponymous products. Since 1988, the Plaintiff, in various corporate forms, has held an exclusive license to use Mr. Miller's name, likeness, voice, and endorsement in its ski films and similar products. In conjunction with that exclusive license, the Plaintiff holds federally registered

---

[1] This case is assigned to Judge Arguello for determination. She is currently involved in hearings that would prevent her from giving prompt attention to the Plaintiff's request for immediate provisional relief in the form of a Temporary Restraining Order. Accordingly, upon Judge Arguello's request, the undersigned has adjudicated only that portion of the Plaintiff's motion requesting immediate relief. The case remains assigned to Judge Arguello for all other purposes.

trademarks in the marks "WARREN MILLER," "WARREN MILLER FILMS," and various other marks incorporating Mr. Miller's name, for use in the marketing of films, athletics, music, and so on.

The Defendant is also engaged in the business of producing athletic and adventure films focused on skiing and is a direct competitor to the Plaintiff. The Defendant has produced a film entitled "Refresh," which, among other things, features footage of and narration by Mr. Miller, accompanied by captions identifying him by name. The Defendant has promoted the film in press releases and through other media by, among other things, expressly emphasizing Mr. Miller's participation in it (again mentioning Mr. Miller by name). The Complaint alleges that "Refresh" premiered in Denver, Colorado on September 11, 2009; was shown in Montreal, Canada on September 18, 2009; and that, "according to [the Defendant's] website, . . . will be shown in various cities throughout the United States, Canada, and Scotland between now and mid-October 2009." According to that website, the next showing is scheduled to take place in Boulder, Colorado on September 23, 2009.

The Complaint asserts a single claim for relief for trademark infringement in violation of 15 U.S.C. § 1114, in that the Defendant's use of Mr. Miller's "name and marks" infringes upon the Plaintiff's rights in those marks.

The Plaintiff has filed a Motion for Preliminary Injunction and Temporary Restraining Order **(# 2)**, requesting an injunction: (i) prohibiting the Defendant "from using the Warren Miller IP – including either the WARREN MILLER web mark or the WARREN MILLER video mark – in advertising or otherwise promoting the motion picture film 'Refresh'"; (ii) that the Defendant "be enjoined from publicly showing 'Refresh'"; and (iii) that [the Defendant] be

compelled to produce a copy of 'Refresh' for [the Plaintiff's] inspection."

Fed. R Civ. P. 65(b) governs the issuance of temporary restraining orders. That rule provides that the Court can issue such an order on an *ex parte* basis "only if" two criteria are satisfied: (i) the movant shows, via "specific facts in an affidavit or a verified complaint" that "immediate and irreparable injury . . will result to the movant before the adverse party can be heard in opposition," and (ii) the movant's attorney certifies in writing the efforts it made to give notice to the non-movant, as well as the reasons why notice to the non-movant should not be required."[2]

---

[2]Some courts in this Circuit have stated that, in addition to the showings required by Rule 65(b), a party seeking a temporary restraining order must make the same familiar four-part showing (*i.e.* immediate irreparable harm, likelihood of success on the merits, balancing of the equities, and no undue harm to the public interest) required of parties seeking a preliminary injunction. *See e.g. Soskin v. Reinerston*, 260 F.Supp.2d 1055, 1057 (D. Colo. 2003). Assuming, without necessarily finding, that the four-factor showing is required in addition to the factors required by Rule 65(b), this Court would harbor concerns over the Plaintiff's showing of likelihood of success and harm to the public interest.

Of the marks claimed by the Plaintiff, only the mark consisting solely of Mr. Miller's name – *i.e.* the undifferentiated "WARREN MILLER" mark – is implicated by the content of "Refresh" and its marketing materials. (In other words, there is no allegation that the Defendant is using marks such as "WARREN MILLER FILMS" or "WARREN MILLER ENTERTAINMENT," only that the Defendant is referencing Mr. Miller by name.) As a mark consisting of a proper name, the undifferentiated "WARREN MILLER" mark is likely not entitled to strong protection, as that proper name/mark will necessarily be frequently used by Mr. Miller and others simply for purposes of identifying him. *See e.g. Brennan's, Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 131-32 (2d Cir. 2004) ("one's surname given at birth creates associations attached to that name which identify the individual. As a consequence, courts generally are hesitant to afford strong protection to proper names . . . To prevent all use of [a man's personal name] is to take away his identity; without it he cannot make known who he is to those who may wish to deal with him") (internal quotes omitted). The concerns discussed in *Brennan* appear to be precisely the case here – the Defendant apparently secured Mr. Miller's agreement to appear in "Refresh," and should be entitled to identify him to the public and advise the public that Mr. Miller does, in fact, appear in their film. (Whether Mr. Miller's participation in and endorsement of "Refresh" breaches his exclusive licensing agreement with the Plaintiff is a question that does not appear to be presented in this case.) According to the Complaint, every instance in which the Defendant used the "WARREN MILLER" mark involved either Mr. Miller

Here, the Court finds that the Plaintiff fails to adequately establish either element. Turning first to the requirement that the Plaintiff show, by "affidavit or a verified complaint" that irreparable injury will occur before the Defendant could be heard in opposition, the Court first notes that the Motion for Temporary Restraining Order is supported by an affidavit that merely describes the content of "Refresh." That affidavit is insufficient to demonstrate harm to the Plaintiff, much less demonstrate that such harm will result before the Defendant can be heard. Thus, the Court turns to the Plaintiff's "verified" complaint.

The verification accompanying the Plaintiff's Complaint is perfunctory. It recites that Maxim Bervy, the Managing Director of the Plaintiff, "ha[s] read the Complaint and know[s] its contents," and that "[t]he facts set forth in the Complaint are true and correct to the best of my knowledge and belief." Mr. Bervy's verification does not specifically identify which portions of the Complaint are based upon his personal knowledge and which are based upon his opinion and belief, nor does it indicate the basis upon which his belief may be formed. This lack of specificity is particularly troubling given the relative paucity of allegations in the Complaint that indicate that harm to the Plaintiff from future screenings of "Refresh" is imminent. The only specific indication in the Complaint that "Refresh" will be screened in the future is an allegation that the Defendant's website reports a scheduled screening in Boulder, Colorado on September 23, 2009 (and on unspecified dates in unspecified locations domestically and abroad in the future). Mr. Bervy does not indicate that he personally ascertained that fact from the

---

personally identifying himself or the Defendants making reference to Mr. Miller as a participant in the film. These uses of Mr. Miller's name are entirely consonant with the public's interest in being able to truthfully identify a specific person.

4

Defendant's website,[3] nor is there any indication that Mr. Bervy has verified that the screening advertised by the website is indeed scheduled to take place at the appropriate venue. Absent a verified indication that the Boulder screening promised by the website is indeed likely to take place, the Plaintiff has not made a showing of imminent injury as required by Rule 65(b)(1)(A).

Moreover, and perhaps more importantly, the Plaintiff has failed to make a sufficient showing that prior notice to the Defendant should be excused. The motion contains a paragraph asserting that

> prior to filing the Complaint and Motion for Temporary Restraining Order and Preliminary Injunction, counsel left [the Defendant's CEO] a detailed message in an effort to confer about the dispute. . . . At the time of filing, the call had not been returned. Counsel also sent via email to [the Defendant's CEO] copies of all pleadings and papers filed in the action to date or to be presented to the Court at the hearing.

Other than indicating that the phone message was left "prior to" filing this action, this certification gives no indication as to how much time elapsed before the Plaintiff deemed the message unreturned. One could construe this representation to mean that the Plaintiff waited as little as five or ten minutes between leaving the message and filing the instant motion. The length of time that the Plaintiff waited for the Defendant to respond is significant for several reasons. First, one might reasonably expect that the Defendant's CEO, upon receiving the message, would want to consult with his own corporate counsel before returning any phone call to the Plaintiff's lawyers, and that such consultation might take several hours or even a day or more. More importantly, the record indicates that the Plaintiff has been aware of the alleged

---

[3] The Court notes that the Plaintiff has attached screenshots of web pages supporting all of its other contentions regarding the Defendant's promotion activities, but has not attached any screenshots of that portion of the website advertising the Boulder screening.

infringement since as early as the film's premiere on September 11, 2009.[4]  Thus, the Plaintiff had nearly two full weeks between the premiere and the next domestic showing of the film, the September 23 screening in Boulder, to seek injunctive relief on notice to the Defendant, rather than *ex parte* relief the day before the scheduled Boulder screening.  Under these circumstances, this Court cannot find that the Plaintiff has sufficiently shown why notice to the Defendant and an opportunity to be heard on the request for injunctive relief should not be required.

For the foregoing reasons, the Plaintiff's Motion for Temporary Restraining Order **(# 2)** is **DENIED** without prejudice.  On or before October 5, 2009, counsel shall jointly contact Judge Arguello's chambers, with their calendars ready, for the purposes of scheduling a hearing with regard to the remaining portion of the motion seeking a preliminary injunction.

Dated this 22d day of September, 2009

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
United States District Judge

---

[4] In all likelihood, the Defendant's promotional materials, including their references to Mr. Miller, predated the premiere by several days or weeks, pushing the date of the Plaintiff's potential knowledge of the alleged infringement even further back.